**In the Matter of Edward Earl PERKINS.**

**No. C6–87–267.**

Court of Appeals of Minnesota.

April 21, 1987.

R. Thomas Greene, Jr., Minneapolis, for appellant Edward Perkins.

Thomas J. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and MULALLY,* JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant was arrested at City Center in downtown Minneapolis and charged with disorderly conduct and trespass. After a court-ordered examination by licensed con-

* Acting as judge of the Court of Appeals by ap-
pointment pursuant to Minn. Const. art. 6, § 2.

sulting psychologist Ronald Jorgensen, appellant was referred to the mental health division for commitment proceedings under Minn.R.Crim.P. 20.01, subd. 4(2)(a). The court held a hearing and issued findings and conclusions directing that appellant be committed to the Anoka Metro Regional Treatment Center as a mentally ill person. This appeal followed. We affirm.

## FACTS

Edward Perkins was asked by security personnel to leave City Center, a restaurant, shopping and office complex in downtown Minneapolis, at approximately 6:00 p.m. on December 6, 1986. Perkins returned about 8:30 that evening and refused to leave the building. Security officer Gregory Tambornino testified Perkins was very loud and attracted a crowd of people. Tambornino summoned police. Perkins' conversation was mostly unintelligible, but he consistently claimed someone was being shot. Police officer Donald Heitland confirmed that Perkins was loud and refused to leave the building. Heitland was unable to elicit a coherent response to questions he addressed to Perkins, but understood Perkins to be talking about a shooting. Heitland's police report documented his observations of Perkins, including Perkins' use of loud obscenities, threats directed at customers, passers-by and the police, and complaints received by an elderly couple that Perkins pushed them out of his way.

Licensed consulting psychologist Chris Meadows examined Perkins and the medical records from Fairview Hospital, where Perkins was held pending a hearing on the commitment petition. Meadows reported Perkins was actively psychotic and suffering from a paranoid disorder. Perkins' thoughts were substantially disordered and there was some disorientation. As an example of the disorder of thought, Meadows cited Perkins' belief that some group was controlling hospital staff and directing them against him and that "the city will be damned by this group." Both Perkins' judgment and behavior were grossly impaired as a result of his mental illness. As examples of impaired judgment and behavior, Meadows cited Perkins' refusal to heed

police warnings to leave City Center and his pushing of the elderly couple.

Meadows recommended inpatient psychiatric hospitalization for two to six months, until administration of psychotropic medications results in the stabilization of Perkins' condition. Meadows told the court that Perkins had no permanent residence, was unemployed and did not understand the need to take medications which had been prescribed for him during a prior commitment. Meadows further testified Perkins lacked insight into his illness and behavior and was not competent to agree to voluntary treatment, even if he had understood the need for it.

The trial court found Perkins had a substantial psychiatric disorder of thought and orientation which grossly impaired his judgment and behavior. The court further found the illness was manifested by Perkins' bizarre conduct, obscene and meaningless language, and assault upon the couple at City Center. The trial court found there was a substantial likelihood that Perkins would harm himself, as shown by his inability to provide for his own basic needs, or others, and because of his assaultive behavior. The court rejected less restrictive alternatives and directed that Perkins be committed to the Anoka Metro Regional Treatment Center as a mentally ill person.

## ISSUE

Is the trial court's finding that appellant is a "mentally ill person" clearly erroneous?

## ANALYSIS

A "mentally ill person" has "a substantial psychiatric disorder of thought, mood, perception, orientation, or memory." To meet the statutory definition, the disorder must result in grossly impaired "judgment, behavior, capacity to recognize reality, or to reason or understand" and must be manifested by "grossly disturbed behavior or faulty perceptions." The person must pose "a substantial likelihood of physical harm to [themself] or others." The likelihood of harm must be demonstrated by "(i) a recent

attempt or threat to physically harm self or others, or (ii) a failure to obtain necessary food, clothing, shelter or medical care, as a result of the impairment." Minn.Stat. § 253B.02, subd. 13 (1986). Perkins challenges only the trial court's finding that he poses a substantial likelihood of physical harm to himself or others.

We will not reverse the factual findings of the trial court unless they are clearly erroneous. Minn.R.Civ.P. 52.01. Meadows testified Perkins had no permanent address and no employment. The referral for commitment proceedings from the criminal division indicated Perkins was having difficulty finding food. Perkins did not take his prescribed medicine. This evidence supports a finding that Perkins posed a substantial likelihood of harm to himself. *See In re Harvego*, 389 N.W.2d 266 (Minn.Ct.App.1986). In addition, the evidence reflected Perkins' assaultive and threatening behavior at City Center. Where violent behavior is documented and confirmed, the trial court need not require direct testimony by a victim of the proposed patient's behavior. *In re Beard*, 391 N.W.2d 29 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986). Although the evidence supports a determination that Perkins has harmed or threatened to harm himself and others, we note that "the statute requires only that an individual pose a threat of harm to others *or* himself." *See* Minn.Stat. § 253B.02, subd. 13; *In re Burmeister*, 391 N.W.2d 89, 91 (Minn.Ct.App. 1986).

## DECISION

The trial court's finding that appellant is a "mentally ill person" is supported by the evidence and is not clearly erroneous.

Affirmed.